[Sac. No. 220.    In Bank.—August 25, 1896.]

DAVID HALE, RESPONDENT, v. EDWARD McGETTIGAN ET AL., SUPERVISORS OF SOLANO COUNTY, APPELLANTS.

CONSTITUTIONAL LAW—ENACTMENT OF STATUTES—JOURNALS OF LEGISLATURE.—There can be no presumption that the legislature disregarded any constitutional requirement in the passage of a statute, and, if the journals are silent upon the observance of any constitutional requirement, it cannot be assumed that such requirement was omitted by the legislature.

ID.—TIME FOR INTRODUCTION OF BILLS—AMENDMENTS—CONSOLIDATION OF BILLS.—Under section 2 of article IV of the constitution, if a bill has been introduced in either house within the first fifty days of the session, whatever is proper in the way of amendment is as admissible after the fifty days as before, and this will include whatever is within the purpose of the bill; and where several bills on the same general subject have been introduced within the fifty days, and referred to a committee of the house, it is not an infraction of the constitutional requirement for such committee subsequently to consolidate them into one bill and report the same as a substitute for them all; such substitute is not the introduction of a new bill.

ID.—COUNTY GOVERNMENT ACT OF 1893—ELECTION OF OFFICERS—CONSTRUCTION.—Section 57 of the County Government Act of March 24, 1893, designating the several officers of a county; section 60 of that act providing that "all elective county and township officers, except otherwise provided for in this act, shall be elected at the general election to be held in November, 1894, and every four years thereafter," . . . . and subdivision 26 of section 170, providing that "the officers mentioned in section 57 of this act, except as hereinafter provided, shall be elected in the year 1894, and every two years thereafter," . . . . must be construed so as to harmonize their apparent conflict; and so construed, it must be presumed that the legislature did not intend the provisions of subdivision 26 of section 170 should be applicable to any other counties than those in the eighth class.

ID.—UNIFORMITY OF ACT—PRESUMPTION.—It must be presumed that the·
legislature intended, by the County Government Act of March 24, 1893,.
to comply with the constitutional requirements to provide for the elec-
tion of county officers by a uniform law, applicable to all the counties.
in the state, and that the act should be operative throughout the state.

ID.—PROVISION FOR BIENNIAL ELECTIONS—UNCONSTITUTIONAL PROVISIONS·.
The provisions of subdivision 26 of section 170 of that act, attempting
to provide for biennial election of county officers in counties of the
eighth class, are unconstitutional for lack of uniformity, and are to be
disregarded, and do not affect the validity of the act itself.

ID.—SYSTEM OF COUNTY GOVERNMENT MUST BE UNIFORM.—A statute pro-
viding for a system of county governments which in its terms is limited
to a portion of the state, would be in contravention of the provisions of
the constitution which require the legislature to pass a uniform system
for the entire state.

ID.—STATUTES, HOW CONSTRUED.—If the different parts of a statute are·
severable and independent of each other, and the provisions which are·
within the constitutional power of the legislature are capable of being·
carried into effect after the unconstitutional part has been eliminated,.
and it is clear from the statute itself that it was the intent of the·
legislature to enact these provisions irrespective of the others, the un-·
constitutional provisions will be disregarded, and the statute read as if
these provisions were not there.

ID.—TERMS OF COUNTY OFFICERS—SUPERVISORS—ELECTIONS.—Under the
County Government Act of 1893, the term of office of all county and
township officers is fixed at four years, and those who were elected at
the general election in 1894 hold their office for four years from the first
Monday after the first day of January, 1895; and the term of office of
the three supervisors in each county who were elected at the general
election in 1892 will expire on the first Monday after the first day of
January 1897, and their successors are to be elected at the general
election to be held in November, 1896.

APPEAL from a judgment of the Superior Court of
Solano County.    A. J. BUCKLES, Judge.

The facts are stated in the opinion of the court.

*Calvin B. Webster*, for Appellants.

*R. B. Carpenter, F. C. Lusk, Garret W. McEnerney*, and
*Frank R. Devlin*, for Respondent.

*Frank R. Wehe*, and *Reed & Nusbaumer*, amici curiæ,
for Respondent.

HARRISON, J.—This action was brought for the pur-
pose of determining the validity of the County Govern-

ment Act, approved March 24, 1893 (Stats. 1893, p. 346), and to obtain a judgment that the county and township officers elected under that act hold their respective offices for the term of four years. A general demurrer to the complaint was overruled, and, the defendants declining to answer, judgment was rendered in favor of the plaintiff, from which the defendants have appealed.

1. It is contended, on the part of the appellants, that the act in question never became a law, for the reason that it appears from the legislative journals that the bill therefor was introduced in the legislature after the expiration of fifty days from the commencement of the session, in contravention of the provisions of section 2, article IV, of the constitution. The respondent contends, on the other hand, that the enrolled bill deposited with the secretary of state is conclusive of the validity of the act, and that it is not competent for the court to go behind this enrolled bill for the purpose of determining whether the legislature complied with this requirement of the constitution; and in support thereof cites the case of *Sherman* v. *Story*, 30 Cal. 253, where it was held that the certificates of the presiding officers of the two houses that a bill had been passed was conclusive of the point in question. It is urged by the appellants in response to this that the present constitution prescribes certain formalities to be observed by the legislature, and certain times at and within which the steps essential to enact a statute are to be observed, which were not contained in the constitution of 1849, under which the case of *Sherman* v. *Story, supra*, was decided, and that, unless these constitutional requirements for the enactment of a statute are complied with, an act passed by the legislature does not become a law; and that the journals of the legislature may be examined for the purpose of ascertaining whether the act was passed in conformity with these requirements. It is, however, unnecessary for us to determine in the present case whether the journals of either branch of the legislature may, under

any circumstances, be examined for the purpose of impeaching the validity of an act that has been duly enrolled and deposited with the secretary of state, since we are of the opinion that it does not appear from those journals that the act in question was not constitutionally passed.

The session of the legislature at which the act in question was passed commenced January 2, 1893. Before the expiration of fifty days from this date, eight different bills entitled "An act to amend ' an act to establish a uniform system of county and township governments, approved March 31, 1891,'" and twenty-nine other bills amendatory of different sections of the same act were introduced into the assembly. Of these latter, assembly bill No. 74 was entitled " An act to amend section 165 " of said act. These several bills were referred to the committee on county and township government, and on March 2d that committee reported to the assembly a substitute for all of said bills, and recommended its passage, and the substitute was thereupon ordered printed. (Assembly Journal, p. 824.) March 8th assembly bill No. 74 was read the first time, and placed on file for second reading. March 9th this bill was read a second time, whereupon " the committee on county and township governments offered a substitute (the county government bill), entitled ' An act to establish a uniform system of county and township governments,'" which was read and adopted (Assembly Journal, p. 1001), and on the same day the assembly ordered that the other of the above bills that had been referred to this committee be withdrawn and stricken from the files, " they having been embodied in the omnibus county government bill, now known as substitute for assembly bill No. 74 " (Assembly Journal, p. 1003). Various amendments were thereafter made to the "substitute for assembly bill No. 74," and on March 13th it was passed by the assembly and transmitted to the senate, where it was afterward passed by that body.

There can be no presumption that the legislature has

disregarded any constitutional requirements in the passage of a statute, and, if the journals are silent upon the observance of any constitutional requirement, it cannot be assumed that such requirement was omitted by the legislature. (*People* v. *Dunn*, 80 Cal. 211.) If a bill has been introduced in either house within the first fifty days of the session, whatever is proper in the way of amendment is as admissible after the fifty days as before, and this will include whatever is within the purpose of the bill. By the same rules a substitute that is germane to the subject of the bill may be adopted, without violating this provision of the constitution, since such substitute is in effect only an enlarged amendment to the bill for which it is offered. (*Toll* v. *Jerome*, 101 Mich. 468.) The various bills for which the substitute in the present instance was reported, related to the County Government Act of 1891, some of them purporting by their titles to amend the entire act, and others to amend certain sections of the act, and it was within the proper function of the committee to which they were referred for consideration to consolidate them into one bill, if in its judgment it was expedient, and to report the same as a substitute for them all. Such report and substitute, instead of being the introduction of a new bill, was only bringing together before the house, in a revised form, bills that had already been introduced and referred to that committee, with a recommendation from it for the action by the house which that committee deemed advisable.

2. It is further contended by the appellants that the provision in section 60 of the act for holding the election of county officers every four years is either superseded by a provision in section 170 that such election shall be every two years, or, if the latter provision is to be limited to counties of the eighth class, that the uniformity of the act is destroyed, and the entire act must be held to be unconstitutional.

The first one hundred and sixty-one sections of the act are general in their character, prescribing the duties

and powers of the several county and township officers, and are applicable to all the counties in the state. By section 162 the several counties are divided into fifty-three classes, "for the purpose of regulating the compensation of all officers hereinafter provided for," and in the succeeding fifty-three sections the compensation of the officers of these several classes is fixed. Section 57 of the act designates the several officers of a county, and section 58 those of a township. Section 60 declares:

"All elective county and township officers, except otherwise provided for in this act, shall be elected at the general election to be held in November, 1894, and every four years thereafter, unless otherwise herein provided, and shall take office at 12 o'clock meridian on the first Monday after the first day of January next succeeding their election." Section 170 fixes the compensation of county and township officers in counties of the eighth class, and is divided into twenty-six subdivisions. Subdivision 26 is in the following terms:

"The officers mentioned in section 57 *of this act*, except as hereinafter provided, shall be elected in the year 1894, and every two years thereafter, and shall take office at 12 o'clock meridian on the first Monday after the first day of January next succeeding their election"; and subdivision 24 provides that all of the provisions in the section relating to counties of this class shall take immediate effect. These provisions of section 170, if literally construed, are in direct conflict with the provisions of section 60, in this respect, that by section 60 "all elective county and township officers" are to be elected every four years, while by subdivision 26 of section 170 "the officers mentioned in section 57 *of this act*" are to be elected every two years, and from this repugnance it is contended that the act is thereby rendered of no effect.

It is a cardinal rule in the interpretation of a statute that all its provisions shall be given effect, if possible, and if, by proper construction of the language used in different sections, provisions which are apparently con-

flicting can be harmonized, it is the duty of courts to so interpret the statute that all its provisions will be allowed to stand. It is not to be assumed that the legislature intended by the same statute to enact two inconsistent provisions, and to declare that the terms of all county officers should be four years, and, at the same time, that they should be two years. For the purpose of ascertaining the intention of the legislature in the matter, we may consider the form in which the different provisions of the statute have been cast, as well as the position of the different provisions in reference to other parts of the act. The provision for holding an election every two years is found in a subdivision of the section relating to counties of the eighth class, and should not be construed as applicable to any other class, or as impairing the previous provision for all classes, unless imperatively required by its language. By limiting the clause used in this subdivision of section 170—"the officers mentioned in section 57 of this act"—to the officers mentioned in section 57 who may be elected in counties of the eighth class, we avoid a construction which would neutralize the provisions of section 60, and, at the same time, follow a natural rule of construction in holding that the legislature intended the provisions of section 170 for counties of the eighth class alone, and that all of its subdivisions are subordinate to this intention, and inapplicable to the counties of any other class. This construction finds support in the fact that the day upon which the election for county officers is to be held is found only in section 60, whereas subdivision 26 of section 170 designates merely the year in which the officers are to be elected, thus impliedly referring to the former section for the day of election, and making that section applicable to the officers of the eighth class. It must, therefore, be held that the legislature did not intend that the provision of this subdivision of section 170 should be applicable to any other counties than those in the eighth class.

The question is then presented, What effect does this

special provision for the counties of this class have upon the entire act?    It is contended by the appellants that, by reason of this special provision for the counties of one class, the uniformity of the act which is required by the constitution is destroyed, and that the entire act is void.    It is not to be controverted that a statute providing for a system of county governments which, in its terms, is limited to a portion of the state, would be in contravention of the provisions of the constitution which require the legislature to pass a uniform system for the entire state.    But it is contended by the respondent that the special provision for one class of counties, in an act purporting to provide for all classes, may be disregarded as being beyond the power of the legislature, and the general provision of the act sustained and made applicable to all the counties of the state.

Whether a statute containing an unconstitutional provision, with others which are constitutional, will be sustained as to those which are constitutional and held invalid merely as to those which are not, depends upon the nature of the different provisions in view of the evident purpose of the legislature.    If the provisions are so interdependent that those which are invalid are to be regarded as the condition or consideration upon which others were enacted, and it is evident that the legislature would not have enacted the statute except in its entirety, and did not intend that any part should have effect unless the whole could be made operative, the entire statute must be held invalid.    On the other hand, if the different parts of the statute are severable and independent of each other, and the provisions which are within the constitutional power of the legislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the statute itself that it was the intent of the legislature to enact these provisions irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if these provisions were not there.    For the purpose of statutory construction, the intention of the legislature,

as shown by the general scope and purpose of the law, is to be ascertained. It is never to be assumed that the legislature intended to enact an unconstitutional statute, or that it supposed that any part of its act was beyond its constitutional power; and, if the general scope of an act is within its power, the act is not to be rendered null by reason of a subsidiary provision which was beyond its power to enact. If the manifest purpose of the legislature can be carried into effect by upholding the act and disregarding such subsidiary provisions, that purpose will not be defeated by an unconstitutional provision contained in a subordinate section in the act.

The title of the present act is "An act to establish a uniform system of county and township governments," and this title, as well as the scope of the statute, may be considered for the purpose of determining the intention of the legislature. It must be assumed from the language used in the title that the legislature intended to comply with the constitutional requirements to provide for the election of county officers by a uniform law, applicable to all the counties in the state, and that the act in question should be operative throughout the state. By reason of the constitutional prohibition against the passage of a special or local law upon this subject, any separate act containing the provisions of subdivision 26 of section 170 would have been invalid, and would not have affected the uniformity of the general act. The provisions of this subdivision are none the less unconstitutional when made an integral part of a general act from which they are severable, than they would be if found in an independent act, and, being unconstitutional, may be disregarded as fully as though embodied in a separate statute. In *Christy* v. *Board of Supervisors*, 39 Cal. 3, the legislature had changed the time for the election of the supervisors of Sacramento county, and provided that the terms of three of the supervisors then in office should be extended for two years beyond the time for which they had been elected. To the contention that the legislature had no power to extend the

term of office, and that, therefore, the entire act was invalid, it was said that the power to change the time of the election was unquestioned, and that it was perfectly plain that such was the evident purpose of the act, and that "if, in addition to the exercise of this undoubted power, they have coupled it with an attempt to perform an unconstitutional act by continuing the incumbents in office until October, 1871, the only result would be that the attempt would be abortive and that portion of the act would be void. But this result would in no degree impair the efficiency of the act as a valid enactment changing the time of the election from 1869 to 1871." Similar principles were announced in *People* v. *McCreery*, 34 Cal. 433, *Rood* v. *McCargar*, 49 Cal. 117, and *Mills* v. *Sargent*, 36 Cal. 379. See, also, *Robinson* v. *Bidwell*, 22 Cal. 379; *Miller* v. *Kister*, 68 Cal. 142.

Mr. Cooley, in his treatise on Constitutional Limitations, page 211, states the rule as follows: "The constitutional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other."

We are of the opinion that the statute under consideration falls within this rule, and that, as the provisions of subdivision 26 of section 170 are invalid by reason of being without the constitutional power of the legislature to enact, they are to be disregarded, and do not affect the validity of the act itself.

3. Section 15 of the County Government Act of 1883

(Stats. 1883, p. 301) provided: "At the general election to be held in the year 1884 a full board of supervisors must be chosen in each county. They shall so classify themselves by lot that three of them shall hold office for four years, and two of them for two years. The supervisors elected at the general election in 1886, and every two years thereafter, shall hold office for four years. They shall take their office on the first Monday after the first day of January after their election"; and section 60 of the same act, after providing that the elective county and township officers, excepting superintendents of public schools and assessors, should be elected every two years, declared: "Supervisors shall be elected as hereinbefore provided," and that assessors and superintendents of schools should be elected every four years. The provisions of these sections remained in force until superseded by the County Government Act of 1891 (Stats. 1891, p. 251), of which section 15 was as follows:

"The supervisors elected at the general elections held in the years 1888 and 1890, and every four years there after, shall hold office for four years. They shall take their office on the first Monday after the first day of January after their election." Section 60 of this act was identical with section 60 of the act of 1883, and contained the same provisions for biennial elections, and also: "Supervisors shall be elected as hereinbefore provided," and that assessors and superintendents of schools should be elected every four years.

Section 15 of the County Government Act of 1893 (Stat. 1893, p. 349) provides: "The supervisors elected at the general elections held in the years 1888 and 1890, and every four years thereafter, shall hold office for four years. They shall take their office on the first Monday after the first day of January after their election." Section 60, above quoted, after providing that the election of all elective county and township officers, "except otherwise provided for in this act," shall be quadrennial instead of biennial, "unless otherwise herein provided," also declares: "Supervisors shall be elected as hereinbe-

fore provided." From these provisions it results that, with the exception of the two supervisors in each county to whom a term of two years fell by lot, as authorized by the act of 1883, the term of office of supervisors, which was originally fixed at four years, has not been changed by any subsequent act, and that the three supervisors who were elected in 1892 are entitled to hold their office for four years and no longer, and that an election for their successors must be held at the general election in 1896; while the two who were elected in 1894 will continue to hold their office until their successors are elected in 1898. Any different construction would have the effect to hold that the legislature by the act of 1893 intended to extend the office of the three supervisors elected in 1891 beyond the period for which they were elected, in disregard of section 9, article XI, of the constitution. The provisions in the act of 1893 for quadrennial elections, for county officers in the twenty-second and thirty-seventh classes of counties, " except three supervisors," evidently referring to the three supervisors who were elected in 1892, indicates that something of this nature was in the mind of the legislature.

We hold, therefore, that under the County Government Act of 1893 the term of office of all county and township officers is fixed at four years, and that those who were elected at the general election in 1894 hold their office for four years from the first Monday after the first day of January, 1895; that the term of office of the three supervisors in each county who were elected at the general election in 1892 will expire on the first Monday after the first day of January, 1897, and that their successors are to be elected at the general election to be held in November of the present year. The superior court was, therefore, in error in holding that none of the county officers were to be elected at the coming election.

The judgment is therefore for this reason reversed,

and the superior court is directed to sustain the demurrer to the complaint.

McFarland, J., Van Fleet, J., Garoutte, J., Henshaw, J., Beatty, C. J., and Temple, J., concurred.