[No. E022410. Fourth Dist., Div. Two. Mar. 30, 1999.]

Conservatorship of the Person and Estate of ANGELA D.
ROBERT D. et al., as Coconservators, etc., Petitioners and Respondents,
v.
ANGELA D., Objector and Appellant.

---

COUNSEL

Peggy O'Neill, under appointment by the Court of Appeal, for Objector and Appellant.

David G. Currie for Petitioners and Respondents.

---

OPINION

**RAMIREZ, P. J.**—Angela D., a conservatee, appeals from a probate court order approving the petition filed by respondents Robert D. and Donna D., Angela's parents and coconservators, for an order authorizing the coconservators to give medical consent for Angela's sterilization under Probate Code

section 1950 et seq.[1] Angela is a 20-year-old severely developmentally disabled woman, who additionally is subject to epileptic seizures and suffers from diabetes. Following a detailed review of the record, including statements from Angela's doctors, and review of the legislative history and policy of the statutes under which the order was sought, we affirm.

FACTS

In July 1996, Robert and Donna D. were appointed coconservators of the person and estate of their daughter, Angela. Their letters of conservatorship granted them authority to give consent to medical treatment for Angela, subject to the limitations stated in section 2356. In September 1997, the coconservators filed a petition seeking an order for sterilization of Angela who was then 19 years old. The petition stated that Angela "has been severely mentally retarded since birth; she is autistic, suffers from complex seizure disorders and is diabetic. [Angela] cannot read nor write; she cannot talk, except for speaking simple words like Hello, Goodbye, etc. She cannot mentally determine right from wrong."

The petition went on to state that Angela lived with the coconservators in the family home and that she had never been institutionalized. At that time she was a full-time student in a special education program at Chino High School in San Bernardino County, where she will continue until she is 22 years old. The petition stated that she was under treatment by W. Donald Shields, M.D., of Univerrsity of California at Los Angeles Children's Hospital, for complex seizure disorders, and by R. Steven Pulverman, D.O., of Chino Medical Group, for diabetes. Angela's estate consisted of public benefits of $590.68 per month, used by the coconservators for Angela's food, clothing, care and medication.

According to the petition, the coconservators had been advised that if Angela were to become pregnant "it would initiate an event of seizures which would result in [her] death, and also the death of the fetus." The coconservators had also been advised that Angela could not be placed on any form of birth control because of the medications she was required to take to control her seizures and her diabetic condition, and that when contraceptive therapy had been tried she had reacted adversely. Attached to the petition were letters from each of Angela's two primary physicians, as well as a letter from a pediatric endocrinologist, detailing the potential risks to Angela of pregnancy, and recommending sterilization.

Also attached was a letter from an obstetrician/gynecologist, Thomas T. Lee, M.D., who had been approached by the coconservators regarding the

---

[1] All further section references are to the Probate Code, unless otherwise indicated.

sterilization surgery. Dr. Lee was recommending a laparoscopic bilateral tubal ligation as the least invasive medical procedure for sterilizing Angela. This would require a general anesthetic for approximately thirty minutes, would involve tiny incisions, would permit Angela to go home the same day, and would involve minor pain or discomfort for no more than three to five days following the procedure. The coconservators sought to have the procedure performed during Angela's school holidays in December 1997.

At a hearing held October 31, 1997, the court appointed counsel for Angela, and ordered Inland Regional Center to prepare a report pursuant to section 1955.[2] A hearing was scheduled for December 4, 1997.

Counsel who had been appointed by the court to represent Angela filed a report with the court acknowledging his appointment under section 1954, and recognizing his duty under that section to undertake representation with the presumption that Angela opposed the sterilization. However, counsel then enumerated the factors that the coconservators had to establish in order to have the petition granted, and concluded that "Every element necessary to be present can be proved by the [coconservators]," with the one possible exception of the requirement of a showing that Angela was likely to engage in sexual activity. Counsel concluded that "in the absence of continual parental supervision or upon a placement in a residential facility or in school . . . [Angela] could easily engage in sexual activity," and thus "every element required can be proved." Counsel thus elected on behalf of Angela not to oppose the petition.

The required report was submitted by Inland Regional Center to the court on December 4, 1997, as was the report submitted by the court-appointed clinical psychologist who had evaluated Angela on November 18, 1997. The psychologist concluded, "It is my recommendation that the courts strongly consider sterilization in this case." The comprehensive and detailed report prepared by counsel for the Inland Regional Center stated that "Inland Regional Center does not support depriving an individual of any rights or civil liberties, including the right to procreate," but ultimately concluded that the Center "will not object to this Petition for Sterilization."

At the December 4, 1997, hearing, counsel for Angela offered the opinion that even though he was required by statute to presume that his client opposed the petition, "my thought was that if the evidence is overwhelming

---

[2]Section 1955 begins by stating: "The court shall request the director of the appropriate regional center for the developmentally disabled to coordinate an investigation and prepare and file a written report thereon." The section goes on to detail the contents of the report and the evaluations of the conservatee that must be attached to the report.

that it's in her best interest to do it, then I have the authority to say it's in her best interest." The court took the matter under submission.

At the request of the court, counsel for Angela submitted a supplemental report summarizing the special procedure set forth in California Rules of Court, rule 39.8, Appeals in sterilization cases, which provides for automatic appeal of an order authorizing consent to sterilization.

Following the hearing, the court appointed a facilitator, as required by section 1954.5, to try to understand the wishes of Angela and communicate her wishes to the court. In his report, the facilitator stated that he had met with Angela and the coconservators and their respective attorneys, that he had attempted to communicate with Angela, that he had reviewed all the documents, and that "All information available suggests that the sterilization is necessary, and I have found no information to support a conclusion to the contrary." Counsel for Inland Regional Center filed a supplemental report acknowledging review of the psychological evaluation of Angela that had been submitted.

The hearing on the petition was held March 3, 1998. Present were the coconservators and their counsel, counsel for Angela, and the court-appointed facilitator. Angela was not present because she had the flu. There was discussion of section 1956, which requires that the conservatee be present at the hearing "except for reason of medical inability." The court acknowledged that Angela's flu was a temporary illness, but chose to proceed with the hearing on the recommendations of the facilitator, who noted that the court had previously seen Angela and that it was not likely she would participate if she were present, and counsel for Angela who was satisfied that she was medically unable to attend.

Counsel for Angela and for the coconservators had stipulated that the physicians who had submitted the reports to the court would be made available for questioning by telephone at the hearing. Section 1955, subdivision (g), states that "Any person who has written a report received in evidence may be subpoenaed and questioned by any party to the proceedings or by the court and when so called is subject to all rules of evidence including those of legal objections as to the qualifications of expert witnesses." Counsel for Angela acknowledged that he had "very mixed feelings about how to handle the situation," but in view of the fact that these were practicing physicians located in different areas of Southern California, and that the code did not require their presence at the hearing, counsel had settled on the telephone interview procedure. Telephone testimony was from

Drs. Shields, Lee, and Pulverman. Angela's father, Robert D., was present and testified.

At the close of the hearing the court issued its ruling, enumerating the elements that were required to be established under section 1958 and concluding that they had been established beyond a reasonable doubt. The court granted the petition, and ordered that the sterilization of Angela was to be accomplished as soon as was practical. The court then issued a stay pending the automatic review by this court. Counsel for Angela submitted a statement of decision, and a formal order was filed May 4, 1998. This appeal, filed on behalf of Angela, followed.

## DISCUSSION

There are no published decisions under section 1950 et seq., the Probate Code chapter dealing with sterilization of those individuals not able to give meaningful consent to the procedure. We therefore will set forth in some detail the showing that is required under the statute, and the evidence that was presented in support of the petition in the present case.

Angela is represented in this appeal by a vigorous advocate who has sought to identify any weakness in the evidence presented, and any failure to comply with the due process requirements of the statute. There are two main arguments made by Angela in this appeal: First, she argues that the evidence is insufficient to support the required findings that she is likely to engage in sexual activity or that supervision is unworkable as an alternative to sterilization; and second, she argues that she was denied equal protection and due process rights when her trial counsel elected not to oppose the petition for sterilization and when the court conducted the trial in Angela's absence, both of which violate specific provisions of the statute.

We will address these particular issues in the context of the entire statutory scheme.

### I. *Historical Setting*

The Probate Code chapter on sterilization was enacted in response to the decision of the California Supreme Court in *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143 [219 Cal.Rptr. 387, 707 P.2d 760]. At the time that case was decided there was a Probate Code section in place stating that "No ward or conservatee may be sterilized under the provisions of this division." (Former § 2356, subd. (d).) The Supreme Court concluded that by enacting

this provision, and contemporaneously repealing Welfare and Institutions Code section 7254 (establishing procedures for sterilization of patients in state institutions), the Legislature "intended to discontinue the longstanding, but discredited, practice of eugenic sterilization, and to deny guardians and conservators authorization to have the procedure performed on their wards and conservatees." (*Conservatorship of Valerie N., supra,* 40 Cal.3d at p. 148, fn. omitted.)

In *Valerie N.,* however, a majority of the Supreme Court held that "the present statutory scheme denies incompetent developmentally disabled persons rights which are accorded all other persons in violation of state and federal constitutional guarantees of privacy." (*Conservatorship of Valerie N., supra,* 40 Cal.3d at p. 148.) The court held the statute unconstitutional, but nonetheless affirmed denial of the conservators' petition for authorization to have the sterilization performed in that case because an inadequate showing had been made. The affirmance was "without prejudice to a renewed petition and hearing at which the requisite showing may be made." (*Ibid.*)

Citing the criteria outlined by courts in other jurisdictions, particularly the decision of the Washington Supreme Court in *Matter of Guardianship of Hayes* (1980) 93 Wn.2d 228 [608 P.2d 635], the California Supreme Court urged the Legislature to "establish criteria and procedural protections governing these applications." (*Conservatorship of Valerie N., supra,* 40 Cal.3d at p. 168.)

The resulting statutes, appearing in section 1950 et seq., were a legislative response to *Valerie N.*[3] The chapter incorporated the provisions suggested by the court in *Matter of Guardianship of Hayes, supra,* 93 Wn.2d 228 [608 P.2d 635] (see *Conservatorship of Valerie N., supra,* 40 Cal.3d at pp. 1165-1166), as well as additional safeguards offered to the Legislature by Capitol People First, an association of mentally retarded individuals working with advisers and attorneys as an advocacy group.

The resulting statutes, which took effect January 1, 1987, and were reenacted without substantive change in 1990, effective July 1, 1991, are at issue in the present case.

---

[3]Thus, for example, Assemblyman Johan Klehs, author of the proposed legislation, wrote a letter dated August 29, 1986, urging the Governor to approve the measure. Klehs stated, "AB 3900 was introduced in response to a 1985 decision of the California Supreme Court," then went on to discuss the holding of *Valerie N.* The Governor signed the legislation on September 22, 1986.

## II. *Statutory Scheme*

 The court may authorize the conservator to consent to sterilization only if the court finds that the petitioner has established, *beyond a reasonable doubt*, the existence of the factors set forth in section 1958.[4]

Under section 1958, subdivision (a), the petitioner must establish that the conservatee is incapable of giving consent to sterilization, as defined in section 1951, and the incapacity is likely to be permanent. Although section 1951 includes a definition of "consent to sterilization," and also contains definitions of terms used within that definition, we need not dwell on this issue in the present case. The two doctors who were asked at the hearing whether Angela was capable of consenting to the sterilization stated they believed she was not. No one has produced evidence or offered an opinion to

---

[4]Section 1958 states: "The court may authorize the conservator of a person proposed to be sterilized to consent to the sterilization of that person only if the court finds that the petitioner has established all of the following beyond a reasonable doubt:

"(a) The person named in the petition is incapable of giving consent to sterilization, as defined in Section 1951, and the incapacity is in all likelihood permanent.

"(b) Based on reasonable medical evidence, the individual is fertile and capable of procreation.

"(c) The individual is capable of engaging in, and is likely to engage in sexual activity at the present or in the near future under circumstances likely to result in pregnancy.

"(d) Either of the following:

"(1) The nature and extent of the individual's disability as determined by empirical evidence and not solely on the basis of any standardized test, renders him or her permanently incapable of caring for a child, even with appropriate training and reasonable assistance.

"(2) Due to a medical condition, pregnancy or childbirth would pose a substantially elevated risk to the life of the individual to such a degree that, in the absence of other appropriate methods of contraception, sterilization would be deemed medically necessary for an otherwise nondisabled woman under similar circumstances.

"(e) All less invasive contraceptive methods including supervision are unworkable even with training and assistance, inapplicable, or medically contraindicated. Isolation and segregation shall not be considered as less invasive means of contraception.

"(f) The proposed method of sterilization entails the least invasion of the body of the individual.

"(g) The current state of scientific and medical knowledge does not suggest either (1) that a reversible sterilization procedure or other less drastic contraceptive method will shortly be available, or (2) that science is on the threshold of an advance in the treatment of the individual's disability.

"(h) The person named in the petition has not made a knowing objection to his or her sterilization. For purposes of this subdivision, an individual may be found to have knowingly objected to his or her sterilization notwithstanding his or her inability to give consent to sterilization as defined in Section 1951. In the case of persons who are nonverbal, have limited verbal ability to communicate, or who rely on alternative modes of communication, the court shall ensure that adequate effort has been made to elicit the actual views of the individual by the facilitator appointed pursuant to Section 1954.5, or by any other person with experience in communicating with developmentally disabled persons who communicate using similar means."

suggest that Angela is capable of giving consent to sterilization, or that her incapacity is other than permanent. In fact, Angela's father testified that at one point Angela had a vocabulary of two hundred fifty words, but that she is now down to four or five words, which include the names of her immediate family members. Thus, the only evidence offered as to the evolution of her disability indicates that her condition is deteriorating.

Section 1958, subdivision (b), requires that petitioners establish, based on reasonable medical evidence, that the conservatee is fertile and capable of procreation. Here the evidence was the statement by Dr. Shields when asked whether Angela was fertile, "I don't really have any information that says she is, but nothing that would suggest she is not." Angela's father gave similar testimony. We reduce our analysis here to a syllogism: If Angela is not fertile then the sterilization procedure would not take away something she has and thus could not be deemed deprivation of a constitutional right; if she is fertile, then it is appropriate to proceed with review of the petition. Rather than subject Angela to procedures to determine whether she is fertile as a prerequisite to filing a petition, we are prepared, like the trial court, to accept the conclusion of Angela's doctor on this issue.

Section 1958, subdivision (c), is the focus of this appeal, and will be discussed in detail below in relation to the evidence presented in support of the petition.

Section 1958, subdivision (d), requires a showing either that (1) the conservatee is permanently incapable of caring for a child, or that (2) pregnancy or childbirth would pose a sufficient risk that "sterilization would be deemed medically necessary for an otherwise nondisabled woman under similar circumstances." Here both prongs of the statute have been satisfied.

Angela's doctors, her parents, the psychological report, and the report by the Inland Regional Center all agree that Angela would have no understanding of a pregnancy and would be completely unable to care for a child.

Similarly, the medical experts agreed that the consequences of a pregnancy, to both Angela and her unborn child, would be devastating and perhaps fatal. Dr. Pulverman testified that pregnancy would have a detrimental effect on Angela's existing conditions and would cause her blood sugars to "bounce all over the place" which would, in turn, cause more of the problems associated with diabetes, including problems with the kidneys, eyes, limbs and heart. He also stated that pregnancy would make her seizures, which are now adequately controlled, even worse. In response to a question by the court, Dr. Pulverman concluded that there was an elevated

risk to her life from pregnancy. Dr. Shields testified that while he could not be sure whether a pregnancy would pose an actual risk to Angela's life, it would have a negative impact on her other medical conditions, specifically her epilepsy, which would probably become substantially worse. He also stated that there would be a risk of malformations to the fetus from Angela's anticonvulsive medication. The evidence is sufficient to establish, beyond a reasonable doubt, that these requirements have been satisfied.

Section 1958, subdivision (e), requires a showing that all less invasive contraceptive methods, including supervision, are unworkable. The section includes the specific injunction that "Isolation and segregation shall not be considered as less invasive means of contraception." (*Ibid.*)

The evidence on this issue was ample. Dr. Shields testified that birth control pills were not an option because of the difficulty of adjusting Angela's various medications which might result in a worsening of her seizures and might mean the birth control pills were not effective to prevent pregnancy. Dr. Pulverman testified that birth control pills would accelerate her diabetes and might affect her seizure disorder. Barrier contraceptive methods would require Angela's cooperation, which was not available.

Angela notes that the coconservators would never be able to establish that supervision would be unworkable, and, of course, that is true. If constant supervision were available, there would be no need for sterilization, although it is not even clear that such supervision would be less invasive than the proposed surgical procedure. In any event, the burden imposed on the conservators of providing constant supervision, especially as the statute precludes isolation or segregation, would be intolerable. The Legislature cannot make proof of the unattainable a condition of access to a constitutional right.

██ "Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished." (*Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1601 [49 Cal.Rptr.2d 302].) ██ The Inland Regional Center report and Angela's father both indicated that Angela would be entering a less sheltered program when she turned 22 years old, a program in which she would be "interacting with peers and persons other than peers," including "male consumers" in community settings. Supervision has been effective to this point in Angela's life, but there is realistic concern that it will not be sufficient in the future as she moves into new programs.

We conclude that there was sufficient evidence that supervision is not available as a less invasive alternative form of contraception because it

would interfere with Angela's proposed participation in a community program; we thus agree with the trial court's ruling on this issue.

Section 1958, subdivision (f), requires that the proposed method of sterilization be the least invasive procedure available. Dr. Lee testified that the proposed laparoscopic bilateral tubal ligation was the appropriate and least invasive procedure. Dr. Pulverman stated that it was an "effective, safe procedure for her," and that there was no better alternative. This conclusion is not challenged in this appeal.

Under section 1958, subdivision (g), the evidence was that the tubal ligation was the best available contraceptive for Angela, and there was nothing to indicate either that a preferable method of sterilization was about to become available, or that there was likely to be an advance in the treatment of Angela's various disabilities.

And finally, section 1958, subdivision (h), requires that the person named in the petition has not made a knowing objection to his or her sterilization. To make every effort to determine whether there has been an objection by the conservatee, section 1954.5 mandates the appointment of a facilitator. A facilitator was appointed in the present case and met with Angela and her attorney and her parents. His declaration states that he attempted to communicate with Angela. After conducting interviews and reviewing all the documents he concluded that the coconservators were committed to Angela's well-being and had no improper motive; that every reasonable protection provided by law had been adhered to; that the professionals involved were unanimous in concluding that sterilization was in Angela's best interest; and that all available information suggested that the sterilization was necessary.

Angela raises no objection in this appeal regarding the adequacy of the evidence under the provisions we have discussed. We agree that the evidence on these issues was, for the most part, uncontradicted and was sufficient to support a finding that the petitions had established those elements of the statute beyond a reasonable doubt.

III. *This Appeal*

A. *Section 1958, Subdivision (c)*

Angela argues on appeal, however, that certain of the requirements under section 1958 were not established, and that the failure to satisfy all elements is fatal to the order granting authorization to approve the sterilization. Angela contends that the coconservators failed to establish, under subdivision (c) of section 1958, that Angela "is capable of engaging in, and is likely

to engage in sexual activity at the present or in the near future under circumstances likely to result in pregnancy."

Angela does not dispute that the evidence established that she is physically sexually mature. No evidence was presented that Angela was sexually active as of the time of the hearing, and that is not an issue in this appeal. The question is whether there was evidence that she was likely to engage in sexual activity in the future.

The psychological report on Angela stated that Angela is "quite passive and compliant and is highly likely to participate sexually, if asked, due to her low level of intellectual ability and her high level of emotional compliance." On appeal, counsel for Angela acknowledges that Angela is likely to participate in sexual activity if asked, due to her passive nature, but argues that there was no evidence presented to suggest that Angela would be placed in a situation where others would actually take advantage of her passive nature and engage her in sexual activity.

The report prepared by the Inland Regional Center stated that when Angela turns 22 years old, which will happen in June 2000, she will no longer be eligible for continued public education at the high school, but would instead be able to attend a day program. The report went on to state that due to Angela's "potential placement with male consumers attending a day program the parents of [Angela] feel it is in her interest to undergo this sterilization procedure as she is emotionally and medically not capable of rearing a child, and medically is unable to maintain a pregnancy due to the severe nature of her seizure activity." Shedding further light on the potential for sexual activity the report stated that Angela "has lived an extremely sheltered life residing in the parental home, and may not be so sheltered in the future. In the future she will be interacting with peers and persons other than peers in community settings. A review of her case file provides that she has had a history of wandering from a program even under close supervision."

Angela's father testified to his concerns about what will happen when Angela turns 22 and goes into a work program. When asked whether there was a possibility that Angela might be exposed to sexual relations in the future, her father replied, "Well, you know, she's not under our control 24 hours a day." He continued, "I'm rather naive I suppose, but I would like to think that she's protected, but . . . she's with bus drivers and she's at school now and our real concern would be coming forward in the work program where she will be not as supervised as she is today."

Our analysis is complicated by the presence of section 1959, another section in this chapter, which must be read in conjunction with subdivision

(c) of section 1958. Section 1959 states: "The fact that, due to the nature or severity of his or her disability, a person for whom an authorization to consent to sterilization is sought may be vulnerable to sexual conduct by others that would be deemed unlawful, shall not be considered by the court in determining whether sterilization is to be authorized under this chapter."[5]

As applied to the present case this provision presents a conundrum. Penal Code section 261 states, in relevant part: "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . : [¶] . . . Where a person is incapable, because of a mental disorder or developmental or physical disability, of giving legal consent, and this is known or reasonably should be known to the person committing the act. . . ." The evidence in the present case is that Angela suffers so severely from her disabilities that she would be unable to give legal consent to sexual intercourse, just as she is unable to consent to the sterilization procedure. Under these facts the court was compelled to consider Angela's vulnerability to "sexual conduct by others that would be deemed unlawful" if it was to conclude that she was likely to engage in sexual activity, as it is not clear that Angela could ever engage in sexual activity that would not be deemed unlawful under Penal Code section 261.[6]

The origins of section 1959 are not obvious. The section does not appear in any of the early drafts of the chapter and thus was not available for analysis and comment during the committee process. The Legislature, in enacting the chapter, clearly intended to follow the direction of the California Supreme Court in *Valerie N.* and to enact statutes that would permit sterilization of a conservatee under circumstances that contained the appropriate safeguards. A provision in the chapter that makes it logically impossible for a conservator to make the necessary showing under the chapter is inconsistent with that intent. To the extent the provision thwarts the purpose of the chapter, and thus frustrates compliance with the mandate of *Valerie N.*, it cannot stand.

Moreover, section 1959 suffers from the same infirmity that prompted the court in *Valerie N.* to strike down the statutes prohibiting sterilization of

---

[5]In *In re Wirsing* (1998) 456 Mich. 467 [573 N.W.2d 51, 53], the trial court made a specific finding that "developmentally disabled individuals are frequently the victims of sexual abuse." The Supreme Court of Michigan there held that the probate court had jurisdiction to hear an application by a guardian for authorization to consent to sterilization, and to order such authorization if it determined the procedure was in the best interest of the ward.

[6]The issue was discussed in *Estate of C.W.* (1994) 433 Pa.Super. 167 [640 A.2d 427], where the court stated: "In one sense, any sexual intercourse with C.W. would be essentially nonconsensual, since it would appear that she is incompetent to give legally sufficient consent to sexual intercourse. Our reference to voluntary sexual activity is meant to refer to intercourse without force, that is, wherein C.W., for whatever reason, would not attempt to resist." (*Id.*, at p. 434.)

wards or conservatees, namely, that it denies to wards or conservatees the reproductive choices available to individuals who do not suffer from such disabilities. In a case such as the present one, for example, in which there is unrefuted evidence that a pregnancy would very probably cause severe and possibly fatal reactions in Angela due to her existing epileptic and diabetic conditions, and further evidence that Angela's medications might cause severe damage to her fetus during a pregnancy, a woman with the capacity to. consent to sterilization would be able to choose that option if she believed that unlawful sexual conduct by others posed a significant threat. Under section 1959, Angela would lack the right to have that same decision made on her behalf.

Although we cannot at present formulate facts under which section 1959 would not undermine the purpose of the statutory scheme, we are reluctant to assert that such facts could not exist. Thus, we limit our holding in the present case to deciding that section 1959 cannot constitutionally be applied to deny Angela's coconservators the authorization to consent to Angela's sterilization.[7]

---

[7]Angela filed a supplemental brief in this appeal asking this court to strike down the entire statutory scheme as being unconstitutional. She argued, "as presently written, the sterilization statutes do not comply with the mandate of *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143 [219 Cal.Rptr. 387, 707 P.2d 760], which held all incompetent conservatees must be provided with the option of sterilization as a contraceptive method." She argued that the limitation contained in section 1959 makes it impossible to satisfy the requirements of section 1958, with the result that no authorization to consent to sterilization can be issued. Thus the mandate of *Valerie N.* has not been complied with.

We agree with Angela that section 1959 cannot be applied to this case. However, we do not find that the entire chapter must be struck down. We conclude instead that section 1959 is severable from the remainder of the chapter and that the rest of the chapter is constitutional as applied in this case.

The California Supreme Court has described the standards for determining severability as follows:

"[I]f the different parts of the statute are severable and independent of each other, and the provisions which are within the constitutional power of the [L]egislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the statute itself that it was the intent of the [L]egislature to enact these provisions irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if these provisions were not there." (*Hale* v. *McGettigan* (1896) 114 Cal. 112, 119 [45 P. 1049], quoted with approval in *Lewis* v. *City of Hayward* (1986) 177 Cal.App.3d 103, 115-116 [222 Cal.Rptr. 781].)

Moreover, ". . . it is clear that severance of particular provisions is permissible despite the absence of a formal severance clause. [Citation.]" (*Legislature* v. *Eu* (1991) 54 Cal.3d 492, 535 [286 Cal.Rptr. 283, 816 P.2d 1309]; accord, *Bjornestad* v. *Hulse* (1991) 229 Cal.App.3d 1568, 1586 [281 Cal.Rptr. 548] [holding that an unconstitutional provision of the Water Code was severable notwithstanding the absence of a severability clause].)

Here, section 1959 is an independent section which was added separately to the chapter. The remaining provisions of the chapter are capable of being carried into effect if section

Even without the limitation imposed by section 1959, however, we must acknowledge that the actual evidence that Angela "is likely to engage in sexual activity" is slim. Nevertheless, in the context of the facts that appear in this case, and the purposes the statute is trying to achieve, we conclude that the evidence of Angela's future sexual activity is sufficient to support the trial court's ruling.

Sufficient evidence to satisfy the statutory requirement on this issue is not an absolute amount, but is instead a legal conclusion. The statute itself, which seeks an evaluation of the likelihood that something will occur in the future, requires a prediction rather than a determination of fact. Here the evidence was that Angela was passive and compliant and that she was "highly likely" to participate sexually if asked to do so. There was also evidence that Angela would be entering a program that had male participants and in which she would be less supervised. There is a very real possibility, under these facts, that Angela would be asked to participate sexually, and a high probability she would participate if asked.

We have enumerated the dangers a pregnancy would hold both to Angela and to her fetus. With such potentially great harm resulting from pregnancy, the required showing of likelihood that Angela would engage in sexual activity resulting in pregnancy is proportionately smaller.[8] We conclude that the coconservators here have made a sufficient showing as to this issue merely by showing a possibility of such activity, and that this element of the statute has been satisfied.

### B. *Trial Counsel's Failure to Oppose the Petition*

 Counsel for Angela argues on appeal that Angela was denied her due process rights because her trial counsel, although he acknowledged the presumption that Angela opposed the petition, failed to oppose the petition on Angela's behalf. As appellate counsel notes, trial counsel "represented [Angela] under the assumption that a 'best interests' standard was to be applied." However, the statute does not require a best interest standard but instead states a presumption that the conservatee opposes the petition. At the time the bill was introduced, it provided that counsel was to be appointed to

---

1959 is stricken. The Legislature made clear its intention to carry out the mandate of *Valerie N.*, and that intention is frustrated by the inclusion of section 1959. We hold section 1959 to be severable from the remainder of the chapter.

[8]This "error cost analysis" approach has been advocated by at least one commentator. (See Cleveland, *Sterilization of the Mentally Disabled: Applying Error Cost Analysis to the "Best Interest" Inquiry* (1997) 86 Geo. L.J. 137, 138, fn. 9 [". . . courts should utilize an analysis that views the potential harms that may occur during and following pregnancy in light of the probability that these harms will be realized"].)

those conservatees not represented, and that counsel was to "represent and safeguard the rights of the individual." (Assem. Bill No. 3900 (1985-1986 Reg. Sess.) as introduced by Assemblyman Klehs in Feb. 1986.) As enacted, the chapter requires appointment of counsel who "shall undertake the representation with the presumption that the individual opposes the petition." (Stats. 1986, ch. 1012, § 1, p. 3484.)

We agree with appellate counsel that trial counsel failed to satisfy his statutory obligation. The vigorous advocacy of appellate counsel demonstrates clearly in what way trial counsel could have met that obligation no matter what his views of the merits of the petition.

The success of appellate counsel's advocacy, however, serves also to defeat this claim. While arguing persuasively that trial counsel had a greater obligation to show in what way the evidence failed to meet the statutory standards, appellate counsel has also demonstrated that on the facts before us, even the best and most complete argument will not prevail. Appellate counsel has ably pointed out the weaknesses in the evidence, and has nonetheless failed to persuade this court that the showing was insufficient.

"Article VI, section 13, of the California Constitution provides that a judgment cannot be set aside 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'" (*Californians for Population Stabilization* v. *Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 293-294 [67 Cal.Rptr.2d 621].) We do not find that greater advocacy by trial counsel would have had any impact on the outcome of the case. While we agree with appellate counsel, and urge trial counsel in future cases to take their obligations as seriously as appellate counsel has taken them here, we do not find this to be a basis for reversing the order.

## C. *Angela's Absence From the Hearing*

██ Finally, Angela contends that the decision to proceed with the hearing on the sterilization when Angela was not present violated section 1956 and violated Angela's equal protection and due process rights. Section 1956 states that "The person to whom the petition applies shall be present at the hearing except for reason of medical inability." The section goes on to state that emotional or psychological instability is not good cause for the absence of the proposed conservatee from the hearing unless attending the hearing is likely to cause the conservatee physiological damage.

Angela was sick with the flu on the date of the hearing. The court conferred with the facilitator who had been appointed, and with counsel for

Angela, and concluded that Angela was ill and thus met the statutory requirement. On the basis of the representations of those advocates and the court's own experience, the court decided to proceed with the hearing, noting that "She has the flu, not able to be here, and based upon her mental state."

Although Angela technically met the statutory requirement of "medical inability" to be present, we are persuaded that the court would have continued the hearing if there had been a possibility that Angela's presence would have had any impact on the outcome of the hearing, and we conclude that it was not error for the court to decide that the hearing could proceed in Angela's absence.

Our holding here is based on the specific facts of this case, and should not be interpreted as a conclusion that the sort of "medical inability" that is referred to in the statute is a temporary flu. Ordinarily the hearing should not proceed in the absence of the conservatee except in the most extreme of circumstances.

Here, however, the court and all the advocates appointed to represent Angela's interests agreed that Angela would make no contribution to the hearing and might have no understanding of the proceedings at all. As stated by the facilitator: "[S]he's been here in the past and the Court has in its file several reports indicating that she is not communicative. She would not likely respond in any way if she were here listening. I can't say whether she would be taking it all in or not."

Even if we were to assume it was error for the court to have proceeded with the hearing, however, Angela has failed to establish reversible error. ■ " 'The standard in conservatorship proceedings requires that error be harmless beyond a reasonable doubt.' [Citation.]" (*Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 507 [30 Cal.Rptr.2d 542].) ■ In light of the strong evidence that neither Angela nor the court would have been in any way influenced by her presence, we would find any error to have been harmless even under this stringent standard. We therefore find Angela's absence does not serve as a basis for reversal.

IV. *Conclusion*

Our examination of this case has revealed no basis for reversing the decision of the trial court authorizing the coconservators to give consent to sterilization of Angela. We cannot conceive of facts that would be more compelling and proceedings that would have been carried out with more diligence and attention to Angela's interests.

The statutes that we interpret here for the first time are more restrictive than those of other states, and more restrictive even than required by the California Supreme Court in *Valerie N.* The court in *Valerie N.* indicated that the enumerated findings should be established by clear and convincing evidence. (*Conservatorship of Valerie N., supra,* 40 Cal.3d at p. 168.) This is the standard that has been adopted by several other states as well. (See, e.g., *Estate of C.W., supra,* 640 A.2d at p. 428 [citing with approval prior decision requiring clear and convincing evidence]; *Matter of Romero* (Colo. 1990) 790 P.2d 819, 822 [". . . the petitioner must prove *by clear and convincing evidence* that the individual is incompetent to make a decision about sterilization" (italics in original)]; *Lulos v. State* (Ind.Ct.App. 1990) 548 N.E.2d 173, 174 ["The proper standard of proof requires clear and convincing evidence that the judicially appointed guardian brought the petition for sterilization in good faith and the sterilization is in the best interest of the incompetent adult."].) In California, however, the Legislature has required evidence beyond a reasonable doubt.

As we evaluate the high hurdle the Legislature has established for ordering authorization under this chapter we should remember the statement of the court in *Valerie N.* that "The state has not asserted an interest in protecting the right of the incompetent to bear children." (*Conservatorship of Valerie N., supra,* 40 Cal.3d at p. 164.) It is not the state's interest being protected here, but rather the interests of the disabled individual. Thus, while that individual is entitled to vigorous advocacy to assure compliance with the statute, ultimately it is the conservatee who must be served by the statutes. In the present case there was little that could be said in opposition to the petition, and we believe the probate court correctly permitted the coconservators to authorize the procedure. The statute remains to be interpreted under less compelling facts.

### DISPOSITION

The order appealed from is affirmed. Parties to bear their own costs on appeal.

Richli, J., and Gaut, J., concurred.

A petition for a rehearing was denied April 28, 1999.