Filed 1/24/22 Conservatorship and Estate of Hugh F. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Conservatorship of the Estate of HUGH F., Deceased. | |
| | E073854 |
| PATRICK F. et al., as Coconservators, etc., | (Super.Ct.No. PRRI1802481) |
|     Petitioners and Respondents, | OPINION |
| v. | |
| ELSIE F., | |
|     Objector and Appellant. | |

APPEAL from the Superior Court of Riverside County. Thomas Cahraman and Kenneth J. Fernandez, Judges.* Reversed.

Timothy Emse for Objector and Appellant.

No appearance by Petitioners and Respondents.

_____

* Judge Cahraman issued the letters of temporary conservatorship and made the jurisdictional rulings that are at issue in this appeal. The case was then assigned to Judge Fernandez, who conducted a trial on the ultimate question of whether to appoint a conservator and who entered the appealable order issuing general letters of conservatorship.

1

Hugh and Elsie F.,[1] who were married for more than 50 years, resided in Brooklyn, New York.[2]  In March 2018, while Elsie was in a New York hospital recovering from a stroke, Patrick and Nichelle brought Hugh to live with them in Corona, California.  Less than six months later, on August 9, 2018, Patrick and Nichelle filed petitions in the probate court to be appointed coconservators of Hugh's person and estate. They alleged Hugh suffered from Alzheimer's disease and could not care for himself or take care of his finances, and they alleged Elsie could not care for herself either.  The probate court exercised emergency jurisdiction and issued letters of temporary conservatorship.

That December, Elsie objected to the petition for general letters of conservatorship and argued the probate court lacked jurisdiction under the California Conservatorship Jurisdiction Act (hereafter the CCJA; Prob. Code,[3] § 1980 et seq.) because Hugh had not been in California for six continuous months before the petition was filed and California was not Hugh's "'[h]ome state.'"  (§ 1991, subd. (a)(2); see § 1993, subd. (a).)  She also filed a competing petition to be appointed conservator of Hugh's person.

---

[1] We refer to the parties by their first names to avoid confusion.  We mean no disrespect in doing so.  (*Estate of O'Connor* (2018) 26 Cal.App.5th 871, 875, fn. 2.)

[2] Hugh had two sons from a previous relationship, Patrick and Richard.  Hugh and Elsie had one daughter, Yvonne.  Patrick is married to Nichelle, who was appointed coconservator in this case.

[3] All further statutory references are to the Probate Code unless otherwise indicated.

2

Although the probate court agreed California was not Hugh's home state on the date Patrick and Nichelle filed their petitions, it concluded the jurisdictional defect had been cured because California was Hugh's home state by the time Elsie filed her competing petition. And, after conducting a jurisdictional hearing (during which a New York judge participated by telephone), the court concluded California was an appropriate forum to conduct a trial and determine whether general letters of conservatorship should issue. At the end of the trial, the court concluded a conservatorship was needed, appointed Patrick and Nichelle as coconservators of Hugh's person and estate, and denied Elsie's competing petition.

On appeal from the order issuing general letters of conservatorship, Elsie argues Judge Cahraman erred by concluding the probate court had home state jurisdiction to appoint conservators. Hugh died while this appeal was pending, so the conservatorship of his person and estate terminated by operation of law. (§ 1860, subd. (a); Cal. Rules of Court, rule 7.1052(b); *Conservatorship of Starr* (1989) 215 Cal.App.3d 1390, 1394.) Although we conclude the appeal is moot because we cannot provide Elsie with effective relief, we exercise our discretion not to dismiss the appeal and to decide the merits "'because it raises important issues that are capable of repetition but likely to evade review.'" (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142, fn. 2.)

We hold that the probate court erred by ruling it acquired home state jurisdiction to appoint conservators when Elsie filed her competing petition. Properly interpreted, the CCJA provides that home state jurisdiction exists or does not exist on the date the conservatorship proceeding is first initiated, and a subsequently filed amended or

3

competing petition cannot cure the lack of home state jurisdiction. Although Judge Cahraman intimated that the probate court might have jurisdiction to appoint a conservator on the ground that California was a "'[s]ignificant-connection state'" (see, e.g., § 1991, subd. (a)(3)), he made no such finding and reiterated throughout the proceedings that he had concluded California had home state jurisdiction. Therefore, we decline to determine whether an alternative basis for jurisdiction is supported by the record. The orders appointing Patrick and Nichelle coconservators and issuing general letters of conservatorship are reversed.[4]

I.

FACTS AND PROCEDURAL BACKGROUND[5]

On August 9, 2018, Patrick and Nichelle filed petitions in the probate court seeking letters of temporary conservatorship and general letters of conservatorship over Hugh's person and estate. The petitions alleged Hugh suffered from Alzheimer's disease and could no longer care for himself or understand and manage his finances. In addition, the petitions alleged Elsie, who resided in New York, suffered a massive stroke and could not care for herself. With respect to the court's jurisdiction, the petition for general letters of conservatorship alleged Hugh was a resident of Riverside County. Proofs of service were filed with the court indicating Elsie was served by mail with notice of the

---

[4] Considering our disposition, we need not address Elsie's claim that Judge Fernandez erred by declining to revisit Judge Cahraman's jurisdictional rulings.

[5] Because Elsie's appeal focuses solely on the probate court's finding that California had home state jurisdiction to appoint conservators, we need not set forth the evidence that was presented to support a conservatorship.

hearing on the petitions and that she was provided telephonic notice at least 24 hours before the hearing.

At a hearing conducted on August 21, 2018, Patrick and Nichelle and an attorney for Hugh informed the probate court that Hugh owned two adjacent homes in Brooklyn, New York. Hugh had been living in one of the homes with Elsie and their adult disabled daughter, Yvonne, and Elsie was collecting rents from the other home. Together, the homes had an estimated value of $4 million. The court, presided by Judge Cahraman, found Elsie had received notice of the hearing and that a temporary conservatorship was necessary, and indicated he was inclined to issue temporary letters with no bond. When Patrick informed the court that Hugh had come to California on March 27, 2018, Judge Cahraman stated, "Well, it's a six-month rule, so I need to find emergency jurisdiction. You filed before the six months." The signed order issuing letters of temporary conservatorship read, in part, "California exercises emergency jurisdiction; temp. conservatee arrived in Calif. 3/27/18."

Elsie appeared at a hearing conducted on October 25, 2018, and objected to the proposed conservatorship. A New York attorney, who appeared with her but had not yet been admitted *pro hac vice*, informed the probate court that no conservatorship proceeding had been filed in New York. Hugh's attorney informed the court that he had no concerns about Hugh being properly cared for by Patrick and Nichelle. Richard, who was in the courtroom, indicated he had no objection to the proposed conservatorship. Judge Cahraman ordered that the temporary conservatorship remain in full force and effect.

On December 6, 2018, Elsie, through local counsel, filed a written objection to the petition for conservatorship. She accused Patrick and Nichelle of abducting Hugh and bringing him to California under false pretenses. With respect to the probate court's jurisdiction, Elsie indicated she and Hugh had been married for 52 years and always lived together in Brooklyn, New York. "He is a resident of Brooklyn, in New York, which is his home state, and all of his friends, real property, and daily living contacts are in New York." Elsie objected to the court's order granting the petition for a temporary conservatorship and argued the "emergency" that supported the order had been fabricated by Patrick and Nichelle when they brought Hugh to California without his consent. She argued the "abduction and hijacking" of Hugh disqualified Patrick and Nichelle from acting as his coconservators. In addition, she argued the court had no jurisdiction under section 1993, subdivision (a), to grant the petition for a general conservatorship over Hugh's person and estate. And, Elsie argued she did not receive proper telephonic notice of the prior hearing because Patrick and Nichelle intentionally omitted her correct telephone number from the proof of service filed with the court. Elsie requested the court set a contested hearing on the petition. The next day, Elsie filed her own petition for conservatorship over Hugh's person. She alleged Hugh was not a California resident and was only temporarily residing here.

On January 31, 2019, Elsie filed a verified petition requesting the probate court decline to exercise jurisdiction and to find, pursuant to section 1996, that New York is the most appropriate forum for the conservatorship proceedings. She once more accused Patrick and Nichelle of abducting Hugh and bringing him to California without his consent and argued, inter alia, that the probate court lacked home state jurisdiction under section 1993 to appoint a conservatorship because Hugh had not been in California for six continuous months before the petition had been filed. In addition, Elsie indicated she had been appointed as Hugh's guardian by a New York court.

On its own motion, the probate court set a jurisdictional hearing for March 4, 2019, to be conducted jointly with the New York Supreme Court for King County. Patrick and Nichelle filed an objection to Elsie's petition to be appointed conservator of Hugh's person. The objection addressed Elsie's claims that Hugh had been abducted but did not address her argument that the probate court lacked jurisdiction to entertain their own petition. And, in a declaration filed in support of their objection to Elsie's request for a hearing under section 1996, Patrick and Nichelle's attorney stated, on information and belief, that Elsie had not yet been appointed as guardian of Hugh, and her petition for appointment was still pending in the New York court. Elsie's attorney subsequently acknowledged the New York petition was still pending.

At the jurisdictional hearing that commenced on March 4, 2019, Judge Cahraman acknowledged that "California was not yet the home state as of the day [Patrick and Nichelle] filed" their petitions. Yet, Judge Cahraman indicated Elsie had waited eight and a half months after Hugh had been brought to California before she objected to the court's jurisdiction. The objection had only mentioned the probate court's jurisdiction "in passing" and it was not "a special appearance to quash the proceedings." Judge Cahraman indicated Patrick and Nichelle could have cured the jurisdictional defect "if they had filed an amended petition three weeks after [the] initial petition, and we wouldn't be having a discussion." Although they "didn't do it," Judge Cahraman concluded, "Elise cured it for [them] by filing her own petition in California, because California was, at that point, the home state of the person."[6]

After further discussion, both Judge Cahraman and the New York judge who appeared telephonically agreed that California had jurisdiction, and the remainder of the hearing would be focused on determining which state was the appropriate forum to decide whether a conservator should be appointed, including deciding whether California should decline to exercise jurisdiction based on Patrick and Nichelle's alleged unjustifiable conduct. On March 27, 2019, Judge Cahraman reiterated he and the New

[6] Judge Cahraman intimated that, even if Elsie had not cured the home state jurisdictional defect, the probate court might still have jurisdiction to issue general letters of conservatorship under section 1993, subdivision (b), because "California did have a significant connection in all of that." However, he made no specific finding that jurisdiction existed on that or any other alternative basis, and instead indicated the real issue was whether "California should defer jurisdiction to New York on the basis that the more convenient forum is New York."

8

York judge had already concluded that, although California was not Hugh's home state when Patrick and Nichelle filed their petition, Elsie "cured that by filing a petition for conservatorship in California after the six-month point." Elsie's attorney argued that New York, not California, was Hugh's home state.[7] Judge Cahraman stated, "But right here, right now, you're dealing with a trial court decision that California is the home state." After hearing additional arguments, Judge Cahraman found that California was an appropriate forum to decide whether conservators should be appointed and denied Elsie's claim that New York was the more appropriate forum.[8]

Trial on the competing petitions for letters of conservatorship was assigned to Judge Fernandez. At a pretrial conference, Judge Fernandez stated on the record that Judge Cahraman had already conducted a "jurisdictional trial" and determined "California was an appropriate forum under Probate Code section 1996." During the trial, when a question arose about whether the judge in the New York proceeding was "waiting to decide what to do because she doesn't know what's going to happen in California," Judge Fernandez stated, "You know, I don't need further testimony on that." After reviewing the minutes of the jurisdictional hearing, Judge Fernandez said, "[T]he

---

[7] Although Judge Cahraman had previously highlighted the tardiness of Elsie's objection and counterpetition, he expressly found that Elsie had preserved her objection to the ruling that California was Hugh's home state.

[8] Elsie does not challenge on appeal Judge Cahraman's ruling that California was an appropriate forum (§ 1996) or his ruling that the probate court had not acquired jurisdiction based on "unjustifiable conduct" by Patrick and Nichelle, such that the court should decline to exercise jurisdiction (§ 1997, subd. (a)(1)).

clear inference from that is that there is a case in New York and they just had a jurisdictional hearing and it was decided that California would hear the evidence."

In her written closing argument, Elsie stated Patrick and Nichelle had filed their petition "prematurely," before Hugh had been in California for six months. Although she did not specifically urge Judge Fernandez to reconsider Judge Cahraman's ruling that home state jurisdiction existed, she nonetheless argued that the court should deny Patrick and Nichelle's petition because "it was filed irregularly." Addressing that portion of Elsie's written submission, Judge Fernandez stated, "I believe Judge Cahraman made the ruling on this. So whether you agree with it or not, I don't believe that's an issue for me to decide in this case." Elsie's attorney argued, essentially, that his client's counterpetition did not cure the fact that Patrick and Nichelle had filed their petition less than six months after they brought Hugh to California. However, counsel stated, "I'll leave that alone for the Court, and if the Court decides not to address it, that's fine." During oral closing arguments, counsel argued, inter alia, that Elsie was not provided with proper telephonic notice of the hearing on the petition for letters of temporary conservatorship.

Judge Fernandez granted Patrick and Nichelle's petition to be appointed coconservators of Hugh's person and estate, issued general letters of conservatorship, and denied Elsie's competing petition. On the record, he found Patrick and Nichelle had not acted out of improper motives when they moved Hugh to California. In addition, Judge Fernandez found "no fault in Elsie's delay in filing for conservatorship over her husband."

10

Elsie timely appealed.[9]

## II.

## DISCUSSION

A. *Although Elsie's Appeal is Moot, We Exercise Our Discretion to Decide Her Jurisdictional Challenge.*

As noted, *ante*, the conservatorship of Hugh's person and estate terminated when he died. (§ 1860, subd. (a); Cal. Rules of Court, rule 7.1052(b); *Conservatorship of Starr*, *supra*, 215 Cal.App.3d at p. 1394.) "'"[T]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."'" (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) In general, an appeal must be dismissed as moot when, through no fault of the respondent, an event occurs that renders it impossible for the reviewing court

---

[9] The order issuing general letters of conservatorship to Patrick and Nichelle is appealable. (Prob. Code, § 1301, subd. (a); Code Civ. Proc., § 904.1, subd. (a)(10) [appeal may be taken "[f]rom an order made appealable by the Probate Code"]; *Conservatorship of D.C.* (2019) 39 Cal.App.5th 487, 493.) Judge Cahraman's interim jurisdictional rulings were not immediately appealable, but we may review them in this appeal. (Code Civ. Proc., § 906; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 101.)

Patrick and Nichelle did not file a respondent's brief. "Therefore, we 'may decide the appeal on the record, the opening brief, and any oral argument by the appellant.' (Cal. Rules of Court, rule 8.220(a)(2).) 'Nonetheless, [the appellant] still bears the "affirmative burden to show error whether or not the respondent's brief has been filed," and we "examine the record and reverse only if prejudicial error is found."'" (*City of Desert Hot Springs v. Valenti* (2019) 43 Cal.App.5th 788, 792, fn. 5.)

11

to provide the appellant with effective relief. (*Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863.)

We directed Elsie to serve and file a supplemental letter brief and address whether any purpose would be served by this court deciding the appeal, whether the probate court had continuing jurisdiction over Hugh's property, and whether a probate case has been filed to deal with his estate (and, if so, in what jurisdiction). Although Patrick and Nichelle did not file a respondent's brief (see, *ante*, fn. 9), we invited them to serve and file a supplemental letter brief addressing the same questions.

In her letter brief, Elsie argued the appeal is not moot because the probate court issued general letters of conservatorship over both Hugh's person *and* estate, and the question of the probate court's jurisdiction remains a live issue because Hugh's "property is in New York, . . . a conflict exists with the estate issue," and she wishes to have Hugh's remains returned to New York. In addition, Elsie argued that the probate court's jurisdiction over the estate is not terminated by Hugh's death. Last, she informed this court that, as far as she knows, a probate case has not been filed with respect to the estate in any jurisdiction. Patrick and Nichelle did not submit a letter brief.

"Death of the conservatee does not terminate the probate court's jurisdiction over the conservatorship estate. The court retains jurisdiction over the estate 'for the purpose of settling the accounts of the guardian or conservator or for any other purpose incident to the enforcement of the judgments and orders of the court upon such accounts . . . .' (Prob. Code, § 2630.)" (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1088-1089, italics omitted; see § 2620, subd. (b).) Moreover, "the conservator has a

12

continuing 'duty of custody and conservation of the estate' after the conservatee's death 'pending the delivery thereof to the personal representative of the . . . conservatee's estate or other disposition according to law.' (Prob. Code, § 2467, subd. (a).) The Probate Code also expressly recognizes that, notwithstanding termination of the conservatorship, the conservator nevertheless retains those powers that are necessary to perform this duty. (Prob. Code, § 2467, subd. (b).)" (*Conservatorship of O'Connor*, at p. 1089; see § 2623, subd. (a)(5); Cal. Rules of Court, rules 7.1052(c), 7.1054.)

In addition, "[u]pon the death of the . . . conservatee, the . . . conservator may contract for and pay a reasonable sum for the expenses of the last illness and the disposition of the remains of the deceased . . . conservatee, and for unpaid court-approved attorney's fees, and may pay the unpaid expenses of the . . . conservatorship accruing before or after the death of the . . . conservatee, in full or in part, to the extent reasonable, from any personal property of the deceased . . . conservatee which is under the control of the . . . conservator." (§ 2631, subd. (a).)

A finding that the probate court lacked jurisdiction to appoint a conservator in the first place will not provide Elsie with effective relief. Even if this court were to reverse the order issuing general letters of conservatorship, Patrick and Nichelle will still be obligated by law to submit their final accounts and to deliver Hugh's estate to his personal representative (whoever that may be), and the probate court will still be obligated to oversee those tasks. And, whether the probate court has jurisdiction to

13

entertain a petition to probate Hugh's will and other questions[10] will have to be addressed in that court in the first instance.

Nonetheless, although the appeal is technically moot, we will exercise our discretion to address Elsie's jurisdictional challenge "'because it raises important issues that are capable of repetition but likely to evade review.'" (*Conservatorship of John L.*, *supra*, 48 Cal.4th at p. 142, fn. 2.)

*B.    The Probate Court's Jurisdiction over Adult Conservatorships.*

Inter alia, the probate court may (1) appoint a conservator of the person for a person who is unable to provide for their personal needs for physical health, food, clothing, or shelter (§ 1801, subd. (a)), (2) appoint a conservator of the estate for a person who is substantially unable to manage their personal finances or resist fraud and/or undue influence (§ 1801, subd. (b)), or (3) appoint a conservator of both the person and the estate (§ 1801, subd. (c)).

With some exceptions not applicable here, the probate court's jurisdiction over adult conservatorships is governed by the CCJA. (§ 2200, subd. (b); see § 1981 [exceptions].) Enacted in 2014 (Stats. 2014, ch. 553, § 20), the CCJA is California's variation of the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act

_____

**10**  For example, the probate court will have to decide whether Elsie may demand the return of Hugh's remains to New York. The record on appeal contains a power of attorney executed in 2015, in which Hugh named Richard as his health care proxy. Unless the court determines the power of attorney is ineffective, it appears that Richard, not Elsie, has the right to control the disposition of Hugh's final remains. (Health & Saf. Code, § 7100, subd. (a)(1); Prob. Code, § 4683, subd. (b)(3).) We express no opinion here on the proper resolution of that issue.

14

(UAGPPJA). (§ 1980, subd. (a); see Recommendation: Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (Dec. 2013) 43 Cal. Law Revision Com. Rep. (2013) p. 93.) The UAGPPJA (and, by extension, the CCJA) was adopted, in part, to provide a mechanism for resolving disputes and uncertainty about what state has jurisdiction to appoint a conservator in a particular case.[11] (8A West's U. Laws Ann. (2021) UAGPPJA (2007), prefatory note, p. 4; 43 Cal. Law Revision Com. Rep. at p. 118.)

The CCJA provides the exclusive basis for determining whether a probate court of this state or the court of another state has jurisdiction to appoint a conservator of the person, the estate, or the person and the estate. (§ 1992.) Once the probate court's jurisdiction to appoint a conservator is established, that court "has exclusive and continuing jurisdiction over the proceeding until it is terminated by the court or the appointment expires by its own terms." (§ 1995.)

The probate court has jurisdiction to appoint a conservator if this is the proposed conservatee's home state. (§ 1993, subd. (a).) "'Home state' means the state in which the proposed conservatee was physically present, including any period of temporary absence, for at least six consecutive months immediately before the filing of a petition for a conservatorship order, or, if none, the state in which the proposed conservatee was physically present, including any period of temporary absence, for at least six consecutive

---

[11] Every state except Florida, Kansas, Michigan, and Texas has adopted the UAGPPJA. The District of Columbia and the Virgin Islands have also adopted it. (8A West's U. Laws Ann., *supra*, pp. 2-3.)

15

months ending within the six months prior to the filing of the petition." (§ 1991, subd. (a)(2).)

If this is *not* the proposed conservatee's "home state,"[12] the probate court has jurisdiction to appoint a conservator if this "is a significant-connection state"[13] and: (1) the proposed conservatee has no "home state" (§ 1993, subd. (b)); (2) the proposed conservatee has a "home state" but that state expressly declined to exercise jurisdiction because California is the most appropriate forum (*id.*, subd. (c)); or (3) no conservatorship petition is pending in the proposed conservatee's "home state" or in another "significant-connection state," no objection is made to the probate court's jurisdiction by a person entitled to notice of the proceeding, and the probate court concludes California is an appropriate forum (*id.*, subd. (d); see § 1996).

Next, if this is not the proposed conservatee's home state *or* a significant-connection state, the probate court has jurisdiction to appoint a conservator only if the proposed conservatee's home state and all significant-connection states have declined to exercise jurisdiction and concluded California is the most appropriate forum, and jurisdiction here comports with the state and federal constitutions. (§ 1993, subd. (e).)

---

[12] If this was not the proposed conservatee's home state on the date the petition was filed, the petitioner is required to comply with this state's notice requirements and provide notice to any persons who would be entitled to notice had the proceeding been initiated in the proposed conservatee's home state. (§ 1998.)

[13] "'Significant-connection state' means a state, other than the home state, with which a proposed conservatee has a significant connection other than mere physical presence and in which substantial evidence concerning the proposed conservatee is available." (§ 1991, subd. (a)(3).)

16

When determining what other states, if any, are significant-connection states for purposes of jurisdiction under section 1993, subdivision (e), the court must consider: "(1) The location of the proposed conservatee's family and other persons required to be notified of the conservatorship proceeding. [¶] (2) The length of time the proposed conservatee at any time was physically present in the state and the duration of any absence. [¶] (3) The location of the proposed conservatee's property. [¶] [And] (4) [t]he extent to which the proposed conservatee has ties to the state such as voting registration, state or local tax return filing, vehicle registration, driver's license, social relationship, and receipt of services." (§ 1991, subd. (b).)

Last, the probate court has special jurisdiction to: (1) appoint a temporary conservator in an emergency[14] for a person who is physically present here; (2) appoint a conservator with respect to real or tangible property located within the state; or (3) appoint a conservator under a provisional order transferring a proceeding here from another state. (§ 1994; see § 1993, subd. (f).) Generally, appointment of a temporary conservatorship over a person who is merely physically present in this state expires no later than 30 days after the appointment. (§ 2257, subd. (a)(2); see § 1994, subd. (a)(1).)

Even if the probate court has jurisdiction under section 1993 to appoint a conservator, it may decline to exercise jurisdiction if it concludes another state is the more appropriate forum. (§ 1996, subd. (a)(1).) In addition, if the probate court

---

[14] "'Emergency' means a circumstance that likely will result in substantial harm to a proposed conservatee's health, safety, or welfare, and for which the appointment of a conservator of the person is necessary because no other person has authority and is willing to act on behalf of the proposed conservatee." (§ 1991, subd. (a)(1).)

17

determines it acquired jurisdiction to appoint a conservator through a party's unjustifiable conduct, it may, inter alia, decline to exercise jurisdiction and assess reasonable expenses and fees against that party. (§ 1997, subds. (a)(1), (b).)

C.     *Standard of Review of Jurisdictional Findings Under the CCJA.*

In her brief, Elsie argues this court should review the probate court's jurisdictional findings for abuse of discretion. She has cited no published authority for the appropriate standard of review for jurisdictional rulings under the CCJA, and we have found none. The drafters of the CCJA relied, in part, on the similar Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA; Fam. Code, § 3400 et seq.). For example, the definition of home state in section 1991, subdivision (a)(2) "is derived from but differs in a couple of respects from the definition of the same term" in the UCCJEA. (Cal. Law Revision Com. com., 52A pt. 2 West's Ann. Probate Code (2016 ed.) foll. § 1991, p. 17.)[15] Therefore, it is appropriate to look to cases under the UCCJEA for guidance here.

---

[15] "'Because the official comments of the California Law Revision Commission "are declarative of the intent not only of the draftsman of the code but also of the legislators who subsequently enacted it" [citation], the comments are persuasive, albeit not conclusive, evidence of that intent.'" (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1132.)

In addition, when interpreting provisions of the CCJA, we may treat as persuasive authority the comments of the Uniform Laws Commissioners on identical or similar provisions of the UAGPPJA. (See § 2, subd. (b) ["A provision of this code, insofar as it is the same in substance as a provision of a uniform act, shall be so construed as to effectuate the general purpose to make uniform the law in those states which enact that provision."].)

As this court has previously held, "when the facts are contested, a trial court's jurisdictional finding under the UCCJEA is reviewed under the deferential substantial evidence standard. [Citations.] When conducting a substantial evidence review, we must review the entire record in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences in support of the [trial] court's findings. [Citation.] The [trial] court's resolution of conflicts in the evidence and credibility assessments are binding on this court." (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286-1287, fn. omitted.) "When the facts are uncontested, the ultimate determination of jurisdiction is a question of law we review de novo." (*Id*. at p. 1286, fn. 5.) Under either standard of review, this court is not free to reweigh the jurisdictional facts.[16] (*Id*. at pp. 1283-1287 & fn. 5.) Questions of statutory interpretation are reviewed de novo. (*Id*. at p. 1287.)

We are persuaded that the standards of review applicable to the UCCJEA should apply here. The basic facts bearing on the probate court's jurisdiction were not contested below, and for obvious reasons are not in dispute on appeal either. Moreover, the probate court's jurisdictional finding, in this case, was based on the court's interpretation of the CCJA. Therefore, we review the question of the probate court's jurisdiction de novo. (*Schneer v. Llaurado*, *supra*, 242 Cal.App.4th at pp. 1286-1287 & fn. 5.)

---

[16] Citing the California Constitution, article VI, section 11, subdivision (c), and section 909 of the Code of Civil Procedure, Elsie argues this court is empowered to make its own determinations of fact and to take additional evidence. (See Cal. Rules of Court, rule 8.252(b), (c).) But that "'authority should be exercised sparingly.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) We find no "'*exceptional circumstances*'" (*ibid*.) that would justify exercising that authority in this case.

19

### D.    *The Probate Court Erred by Concluding It Had Home State Jurisdiction.*

As Judge Cahraman acknowledged, there is no question California was not Hugh's home state when Patrick and Nichelle filed their petitions. Hugh was brought to California on March 27, 2018, and he had not yet been here "for at least six consecutive months immediately before" Patrick and Nichelle filed their petitions on August 9, 2018. (§ 1991, subd. (a)(2).) Nonetheless, Judge Cahraman concluded Patrick and Nichelle could have cured the lack of home state jurisdiction by filing an amended petition after Hugh had been in California for six continuous months. And, because Elsie filed her competing petition to be appointed conservator in December 2018—after Hugh had been here for more than eight continuous months—Judge Cahraman concluded she cured the defect for them. Judge Cahraman's finding of home state jurisdiction, in this case, is sound only if the phrase "a petition for a conservatorship order" in section 1991, subdivision (a)(2), is interpreted broadly to include the first petition that commenced the proceeding *and* a subsequently filed one. For the following reasons, we conclude only the first petition may be considered.

When interpreting statutes, "'[w]e begin by examining the statutory language, giving the words their usual and ordinary meaning. If there is no ambiguity, the plain meaning of the language governs.'" (*Conservatorship of Presha* (2018) 26 Cal.App.5th 487, 496.) We must give statutes a fair and reasonable interpretation with due regard for the language used and the Legislature's purpose. (*Conservatorship of Angela D.* (1999) 70 Cal.App.4th 1410, 1420.)

20

"'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language." (*Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1157-1158.) In addition, we may consider how similar statutory schemes have been interpreted. "'"[S]tatutes should be construed in light of one another [citations] and . . . when statutes are *in pari materia* similar phrases appearing in each should be given like meanings."'" [Citation.] 'Two "'[s]tatutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of person[s or] things, or have the same purpose or object.'"'" (*People v. Tran* (2015) 61 Cal.4th 1160, 1168.)

As indicated, *ante*, a proposed conservatee's home state is where he or she was physically present "for at least six consecutive months immediately before the filing of a petition for a conservatorship order . . . ." (§ 1991, subd. (a)(2).) What constitutes "a petition for a conservatorship order" (*ibid.*) for purposes of home state jurisdiction under section 1993, subdivision (a), is ambiguous in a case such as this. Does it apply solely to the first petition or does it include a later filed amended petition and/or a competing petition filed by an objector? The statutory scheme does not provide a clear answer. Conservatorship proceedings are initiated when the proposed conservator files a "petition" (§§ 1820, 1821),[17] which is defined broadly to mean "an application or request

---

[17] See California Rules of Court, rule 7.1050(a); Judicial Council Forms, forms GC-111, GC-310.

in the nature of a petition." (§ 1430.) Patrick and Nichelle's original petitions *and* Elsie's competing petition satisfy those general criteria.

The available legislative history is not determinative either. The Legislature intended that home state jurisdiction to appoint a conservator has priority over other bases of jurisdiction. (Cal. Law Revision Com. com., 52A pt. 2 West's Ann. Probate Code, *supra*, foll. § 1993, p. 20 ["home state" jurisdiction is first in "a three-level priority for determining which state has jurisdiction"]; 43 Cal. Law Revision Com. Rep. at p. 118 ["home state" jurisdiction is "[a]t the top of the [three-tier] hierarchy" established by the UAGPPJA].) And, the six-month residency requirement for home state jurisdiction under section 1993, subdivision (a), "is fulfilled or not on the date the petition is filed." (Cal. Law Revision Com. com., 52A pt. 2 West's Ann. Probate Code, *supra*, foll. § 1993, p. 20.) But, nothing in the legislative history of the CCJA clearly indicates the Legislature intended that a probate court's determination of home state jurisdiction cannot take into consideration an amended or competing petition filed later.

However, as we did for the standard of review, we find it useful to consider the similarly worded UCCJEA when interpreting home state. As already stated, *ante*, the CCJA's definition of home state was modeled on the UCCJEA. (Cal. Law Revision Com. com., 52A pt. 2 West's Ann. Probate Code, *supra*, foll. § 1991, p. 17.) For purposes of the UCCJEA, a home state is the state in which the child lived "for at least six consecutive months immediately before the commencement of a child custody proceeding." (Fam. Code, § 3402, subd. (g).) "'Commencement' means the filing of *the first* pleading in a proceeding." (*Id.*, at § 3402, subd. (e), italics added.) The courts have

22

long interpreted the UCCJEA (and its predecessor) to mean what it says: subject matter to make an initial child custody determination either exists or does not exist when the relevant proceeding is commenced. (See, e.g., *A.M. v. Superior Court* (2021) 63 Cal.App.5th 343, 350; *In re Aiden L.* (2017) 16 Cal.App.5th 508, 516; *Schneer v. Llaurado*, *supra*, 242 Cal.App.4th at p. 1287; *Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1084; *Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1316-1317; *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 491; *In re Marriage of Newsome* (1998) 68 Cal.App.4th 949, 956; *Adoption of Zachariah K.* (1992) 6 Cal.App.4th 1025, 1035; *Plas v. Superior Court* (1984) 155 Cal.App.3d 1008, 1015, fn. 5.) If the rule were otherwise, an absconding parent would be encouraged to purposefully delay the proceeding "to gain time to establish significant contact with the state." (*Plas*, at p. 1015, fn. 5.)

Child custody issues governed by the UCCJEA arise in various forms of proceedings (see Fam. Code, § 3402, subd. (d) [defining "'Child custody proceeding'"]), so the drafters of that act were obviously careful to use broad language when grounding home state jurisdiction on the first pleading filed in the proceeding (*id.* at subds. (e), (g)). In contrast, a proceeding to appoint a conservator may only be commenced by filing a petition (Prob. Code, §§ 1820, 1821), so the drafters of the CCJA had no need to use the more generic first pleading. Nonetheless, the same policy concerns under the UCCJEA apply in this context. Unless the CCJA is interpreted to require that home state jurisdiction exists or does not exist on the date a conservatorship proceeding is first commenced—i.e., when the *first* petition to appoint a conservator is filed—parties will be

encouraged to purposely delay the proceeding until the proposed conservatee has resided in the state for six consecutive months and then file an amended or competing petition.[18] Such a result will frustrate, not advance, one of the principal purposes of the CCJA—to resolve uncertainty about what state has jurisdiction to appoint a conservator. (8A West's U. Laws Ann., *supra*, UAGPPJA (2007), prefatory note, p. 4; 43 Cal. Law Revision Com. Rep. at p. 118.)

Therefore, we conclude the most reasonable interpretation of home state under section 1991, subdivision (a)(2), that comports with the purposes of the CCJA, is that the proposed conservatee must have resided in California for at least six continuous months on the date the first petition to appoint a conservator is filed. Because Hugh had not been physically present in California for at least six continuous months on the date Patrick and Nichelle filed their petitions, we must conclude the probate court erred when it ruled the court had home state jurisdiction.

---

[18] To repeat, Judge Fernandez expressly found that Patrick and Nichelle had not acted out of improper motives when they moved Hugh to California and that Elsie had not been at fault when she delayed in filing her own petition, and nothing in this opinion should be construed to imply we conclude either party acted improperly.

III.

DISPOSITION

The orders appointing Patrick and Nichelle coconservators and issuing general letters of conservatorship are reversed.  Elsie shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER
J.

We concur:


RAMIREZ
P. J.


SLOUGH
J.

25